IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-661-FL

| | | |
|---|---|---|
| MICHAEL FRANKLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| MARTIN O'MALLEY, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Michael Franklin ("Plaintiff" or, in context, "Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and disability insurance benefits ("DIB"). This matter is before the court on Plaintiff's brief [DE-14] ("Pl.'s Brief") seeking judgment in his favor, and Defendant's brief [DE-16] in opposition ("Def's Brief"). The time for filing responsive briefs has expired pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), and this case is ripe for adjudication. The briefs were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1). Having reviewed and considered the record, the administrative transcript, the briefs submitted by the parties, and the applicable law, it is recommended that Plaintiff's Brief [DE-14] be allowed, Defendant's Brief [DE-16] be denied, and the case be remanded to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## I. STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability and DIB on August 6, 2021, alleging disability beginning July 31, 2018. Transcript of Proceedings ("Tr.") 70-71, 185-

86.  Plaintiff amended his alleged onset date to January 13, 2020.  Tr. 23, 194.  His claim was denied initially.  Tr. 70-78, 90-94.  Plaintiff filed a request for reconsideration (Tr. 95), and was denied upon reconsideration on January 5, 2023 (Tr. 79-89, 111-15).  On January 23, 2023, Plaintiff requested a hearing before the Administrative Law Judge ("ALJ").  Tr. 116-17.  A hearing before the ALJ was held on June 26, 2023, at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified.  Tr. 49-69.  On July 17, 2023, the ALJ issued a decision denying Plaintiff's request for benefits.  Tr. 25-48.

On September 14, 2023, Plaintiff requested a review of the ALJ's decision by the Appeals Council.  Tr. 182-84.  On September 22, 2023, the Appeals Council denied Plaintiff's request for review.  Tr. 1-6.  Plaintiff then filed a complaint in this court seeking review of the now-final administrative decision.

## II.  STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance."  *Laws*, 368 F.2d at 642.  "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting

evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

Where the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision (Tr. 5), "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *Felts v. Astrue*, No. 1:11-CV-00054, 2012 WL 1836280, at *1 (W.D. Va. May 19, 2012) (quoting *Wilkins v. Sec'y, Dep't of Health & Hum. Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2.

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity ["SGA"]," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform . . . past work or (5) any other work.

3

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(4).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. Tr. 44. At step one, the ALJ determined Plaintiff had not engaged in substantial gainful employment since January 13, 2020, the alleged onset date. Tr. 30.

Next, at step two, the ALJ determined Plaintiff had the following severe impairments: chronic back pain due to degenerative disc disease; obstructive sleep apnea; bilateral knee degenerative joint disease; history of bilateral rotator cuff tears; plantar fasciitis and posttraumatic stress disorder. Tr. 30. The ALJ also found Plaintiff had the following non-severe impairments:

4

primary open angle glaucoma, mild, bilaterally; and cataracts bilaterally. Tr. 30.

However, at step three, the ALJ concluded these impairments, both physical and mental, were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 31. Applying the technique prescribed by the regulations, the ALJ found that Plaintiff's mental impairments have resulted in moderate limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself. Tr. 31-32.

Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, finding Plaintiff had the ability to perform medium work[1] with the following limitations:

> except frequently, but not constantly push and pull with the bilateral lower extremities due to bilateral knee degenerative joint disease (DJD). The claimant can frequently climb ramps, occasionally climb stairs, and never climb ladders, ropes or scaffolds due to back pain and neck pain. The claimant can frequently stoop and kneel; occasionally crouch and crawl due to knee pain. The claimant must avoid concentrated exposure to extreme heat and workplace hazards due to a history of hypertension. The claimant can understand, remember and carry out instructions for simple routine tasks without a specific production rate requirement

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. "Sitting" generally totals about 6 hours of an 8-hour workday. *Id.* A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id*.

*e.g.* assembly line work. They have the ability to maintain concentration persistence and pace for two-hour segments for completion of simple routine tasks (assuming normal 15-minute morning and afternoon breaks and a 30-minute lunch break). They can interact frequently with supervisors, occasionally with coworkers and occasionally with the public. The claimant has the ability to adapt to workplace changes involving simple work-related decisions.

Tr. 33.

In making this assessment, the ALJ found Plaintiff's statements about his limitations not entirely consistent with the medical evidence and other evidence in the record. Tr. 34.

At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of his past relevant work as a tank and amphibian tractor operations chief, as actually or generally performed. Tr. 42. Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff is capable of making an adjustment to other work that exists in significant numbers in the national economy. Tr. 42-44.

## V.  DISCUSSION

Plaintiff contends that the ALJ erred by failing to perform a proper function-by-function evaluation of Plaintiff's ability to lift and carry when formulating the RFC. Pl.'s Brief. [DE-14] at 1. Plaintiff argues that the ALJ (i) failed to appropriately account for the subjective limitations, as a result of the pain in his shoulders, corroborated by Plaintiff's documented limited range of motion in his shoulders and shoulder surgeries, and (ii) impermissibly contradicted the limitations in lifting and carrying opined by all four medical professionals, including the state agency physicians, who offered opinions on plaintiff's functional limitations. Pl.'s Brief. [DE-14] at 5-6.

Defendant argues that substantial evidence supports the ALJ's RFC and that Plaintiff is simply requesting that the court impermissibly re-weigh the ALJ's decision. [DE-16] at 6. Specifically, Defendant cites a sister court in this circuit in support of the proposition that a

6

claimant's argument that a contested function was overlooked, without identification of any evidence that was not considered by the ALJ, constitutes a request to reweigh the evidence. *Id.* (citing *Janell W. v. Kijakazi*, CV 22-2339-BAH, 2023 WL 4456848, at *4 (D. Md. July 11, 2023)).

"A Social Security claimant's RFC represents 'the most he can still do despite his limitations.'" *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting 20 C.F.R. § 416.945(a)(1)). In assessing an individual's RFC, an ALJ considers that person's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). Further, "the ALJ must consider all of the claimant's medically determinable impairments of which the ALJ is aware, including those not labeled severe at step two." *Shinaberry v. Saul*, 952 F.3d 113 (4th Cir. 2020) (quoting *Monroe v. Colvin*, 826 F.3d 176, 178 (4th Cir. 2016)).

"[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." *Monroe*, 826 F.3d at 189 (quoting *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015)). Indeed, "the ALJ's logical explanation is just as important as the other two [components] . . . and our precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas*, 916 F.3d at 311 (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). The ALJ is not required to discuss every piece of evidence in the record. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citations omitted). However, where a court is "left to guess about how the ALJ arrived at his conclusions on [a claimant's] ability to perform relevant functions . . . , remand is necessary." *Mascio*, 780 F.3d at

7

637.

Additionally, "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *McNeill v. Saul*, No. 5:20-CV-244-M, 2021 WL 3701348, at *3 (E.D.N.C. June 2, 2021) (alterations in original) (quoting *Mascio*, 780 F.3d at 636). And while there is no "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis[,]" courts have found remand warranted where the ALJ fails to assess a "contested" function that is "critically relevant to determining [a claimant's] disability status . . . ." *Dowling*, 986 F.3d at 388-89 (remanding case where the ALJ failed to evaluate the plaintiff's ability to sit when it was a contested function critical to determining the plaintiff's disability status, and stating that the ALJ should have included "an analysis [of plaintiff's ability to sit] that was separate from the ALJ's appraisal of [the plaintiff's] ability to perform other functions, and [this analysis] should have been accompanied by 'a narrative discussion describing' the evidence supporting it").

As Defendant correctly notes, Plaintiff does not allege that the ALJ failed to discuss any relevant medical or other evidence. Specifically, the ALJ clearly acknowledged Plaintiff's testimony regarding "rotator cuff tears in both shoulders and limited range of motion" and that "[i]t is hard for him to reach overhead (on both sides) and there are certain movements he can['t] do anymore." Tr. 34. The ALJ provided detailed summaries of the medical records, treatment notes, and medical opinions.

With respect to the limiting effects of Plaintiff's shoulder injuries, the ALJ documents Plaintiff's reports of right shoulder pain shortly after the amended alleged onset date, but that he was not "experiencing radicular arm pain, clicking sensation in the right shoulder, the right

8

shoulder does not catch during movement, and the right shoulder joint did not feel unstable." *Id.* The ALJ continues that "[t]here was no reported neck pain, right shoulder weakness and no numbness of right upper arm." *Id.* The ALJ considered that during an examination "there was evidence of tenderness on palpation at the bicipital groove, pain with active abduction and external rotation" but that "[t]he remainder of the shoulder examination reflected normal active and passive abduction, adduction, forward flexion and elevation through active abduction" and that "[m]otor strength and sensation of the right shoulder were normal." *Id.*

The ALJ also noted Plaintiff's complaints of pain between the "shoulder blades, mostly on the left side" in August 2020, which "throbb[ed] worse with certain movements," but which did not "radiat[e] to the neck or arms." *Id.* Plaintiff did not experience any relief of this pain through medication. *Id.*

She considered Plaintiff's chiropractic treatment records, which showed normal muscle strength and "slow, but progressive improvement" by July 2021. Tr. 35. However, Plaintiff continued to exhibit "left shoulder tenderness at the bicipital groove, pain with active abduction and external rotation, and left acromioclavicular joint tenderness[,]" but otherwise "normal active and passive abduction, adduction, forward flexion and elevation through active abduction" as well as normal "[m]otor strength and sensation." *Id.*

The ALJ discussed plaintiff's physical consultative examination in which plaintiff reported "occasional, dull, achy, sharp, burning, tingly, throbbing pain in his . . . shoulders, and radiating from his neck to his left shoulder" and "functional limitations, secondary to pain," which included an inability to "lift[] more than 30 pounds." Tr. 35. The examination showed "diminished muscle strength (4/5), [without any] evidence of palpable muscle spasms" and "decreased [range of motion in the] left shoulder." Tr.35-36.

9

The ALJ noted that Plaintiff "participated in physical therapy after left rotator cuff surgery through February 2022" but that were was no "further surgical intervention on the shoulders." Tr. 36. As a part of his updated physical consultative examination, Plaintiff "described a dull, achy, sharp, burning, tingly, throbbing pain in his . . . shoulders bilaterally with a pain intensity of 8/10, at the time of the examination, but it was usually 4-10/10." *Id.* The examination also revealed decreased bilateral shoulder range of motion. Tr. 37.

The ALJ then considered the medical opinions of: (i) state agency consultant Edward Woods, M.S. M.D. ("Dr. Woods"); (ii) state agency consultant Howard Stein, M.D. ("Dr. Stein"); (iii) consultative examiner Jean-Paul Alishahi, D.O. ("Dr. Alishahi"); and (iv) consultative examiner Jennifer Harvey, NP ("NP Harvey"). Each of the four medical professionals opined that plaintiff was limited to work at the light exertional level or provided limitations that arguably limited work to the light exertional level.[2]

Dr. Woods opined that Plaintiff was limited to work at the modified light exertional level and, as relevant here, could frequently, but not constantly reach overhead with the left upper extremity. Tr. 39. The ALJ did not find a limitation to the limited light exertional level with the manipulative restriction to be persuasive, because although Plaintiff "underwent surgical repair of the left shoulder, the record did not document subsequent significant and ongoing complaints or abnormal findings related the claimant's left shoulder." *Id.*

At the reconsideration stage, Dr. Stein opined that Plaintiff was limited to work at the

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, 20 C.F.R. § 404.1567(b), and medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c). Consultative examiner NP Harvey opined that Plaintiff "could be expected to carry 20 pounds frequently and 25 pounds occasionally." *See* Tr. 40-41. Accordingly, without further explanation from the VE or ALJ, the undersigned does not find that the limitations opined by NP Harvey are compatible with work at the medium exertional level.

modified light exertional level. Tr. 40. The ALJ also found this limitation unpersuasive because "treatment was largely conservative, and the record did not document significant abnormal objective findings consistent with the opined restrictions to work at the light exertional level." *Id.*

Dr. Alishahi found that Plaintiff "could be expected to carry ten pounds frequently and 20 pounds occasionally" and that Plaintiff had "left manipulative limitations on reaching, pushing, pulling . . . due to [Plaintiff's] left shoulder decreased range of motion." Tr. 40. Dr. Alishahi's own examination reflected, *inter alia*, diminished generally muscle strength (4/5) and decreased left shoulder flexion. *Id.* The ALJ did not find Dr. Alishahi's limitations persuasive because "the record did not document significant abnormal objective findings consistent with the opined restrictions to work at the light exertional level." *Id.*

NP Harvey opined that Plaintiff "could be expected to carry 20 pounds frequently and 25 pounds occasionally." Tr. 40-41. The ALJ did not find these limitations to be persuasive because "[w]hile the record documented abnormal imaging of the left shoulder, resulting surgery, and decreased range of motion on examination, there was no subsequent significant evidence of ongoing complaints or abnormal clinical findings." Tr. 41.

While the ALJ did discuss the contested function of "lifting" to a certain degree throughout the written decision, her analysis regarding why limitation to a modified light exertional level was inappropriate (*see* Tr. 39-41) appears to apply an incorrect legal standard in light of *Oakes v. Kijakazi,* 70 F.4th 207, 215 (4th Cir. 2023), and otherwise frustrates meaningful review. *See Coffman*, 829 F.2d at 517; *Thomas*, 916 F.3d at 311.

Plaintiff testified at his administrative hearing before the ALJ that he struggled to lift anything heavier than a gallon of milk due to pain in his shoulders. Tr. 60. He also indicated that he couldn't even "hold a gallon of milk for a long period of time." *Id.*

11

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" but that "his statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 34. The ALJ appears to discount Plaintiff's complaints of right shoulder pain based on her findings (i) that Plaintiff did not "experience[e] radicular arm pain, clicking sensation in the right shoulder, the right shoulder does not catch during movement, and the right shoulder joint did not feel unstable[,]" as well as, (ii) that "[t]here was no reported neck pain, right shoulder weakness and no numbness of right upper arm." Tr. 34. The ALJ does not explain how a lack of clicking, catching, or the other factors she cites contradicts Plaintiff's subjective limitations allegedly caused by his pain in his shoulders. Similarly, the ALJ does not explain how "tenderness on palpation at the bicipital groove, pain with active abduction and external rotation" did not support any limitations in lifting simply because "[t]he remainder of the shoulder examination reflected normal active and passive abduction, adduction, forward flexion and elevation through active abduction." Tr. 34.

While the ALJ cites examinations documenting "[normal] muscle strength," (Tr. 35) she does not explain how she accommodated documented findings of "diminished muscle strength (4/5)" (Tr. 35, 40). The Commissioner argues that Plaintiff's diminished muscle strength is accommodated by finding Plaintiff capable of working at the modified medium, as opposed to a higher, exertional level. Tr. 35. However, the ALJ does not cite to any medical or other evidence to support the finding that Plaintiff is capable of lifting 50 pounds at all.

The Fourth Circuit Court of Appeals has held that if Plaintiff's "medically determinable impairment(s) . . . could reasonably be expected to produce [Plaintiff's] symptoms," 20 C.F.R. § 404.1529(c), which the ALJ found here (Tr. 34), a claimant may "rely exclusively on subjective

12

evidence to prove that [his] symptoms [are] so continuous and/or severe that they prevented [him] from working." *Oakes,* 70 F.4th at 215 (alterations in original) (quoting *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 96 (4th Cir. 2020). Accordingly, while contradictory evidence may discredit Plaintiff's subjective statements regarding the limiting effects of his impairments, a mere absence of medical evidence does not.

Here, the ALJ has not (i) pointed to any medical or other evidence, which contradicts Plaintiff's testimony that his lifting is limited by pain in his shoulder, or (ii) provided sufficient explanation as to how she reached her conclusion. In fact, Plaintiff reported similar limitations to his medical providers including at the physical consultative examination in which Plaintiff reported "occasional, dull, achy, sharp, burning, tingly, throbbing pain in his . . . shoulders, and radiating from his neck to his left shoulder" and "functional limitations, secondary to pain," which limited Plaintiff to "lifting [no] more than 30 pounds." Tr. 35.[3] While there may indeed be evidence contradicting Plaintiff's subjective limitations, a mere absence of medical evidence in support thereof is not a viable basis to reject such limitations.

Because the ALJ appears to discount Plaintiff's subjective limitations in lifting secondary to pain in his shoulders based upon an absence of medical evidence, as opposed to any contradictory evidence, she applied the incorrect legal standard in light of *Oakes,* 70 F.4th at 215. The undersigned finds that this error is not harmless, as greater lifting limitations could exclude cited jobs "that exist in significant numbers in the national economy that [Plaintiff] can perform."

---

[3] The undersigned notes that "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c). Accordingly, the undersigned finds that a limitation to lifting no more than 30 pounds without further explanation by a VE does not clearly support work at the modified medium exertional level.

13

Tr. 42-43 (exclusively noting jobs at the medium exertional level).[4]

Plaintiff also alleges that the ALJ erred by impermissibly contradicting the limitations in lifting and carrying opined by all four doctors, including the state agency physicians, who offered opinions on plaintiff's functional limitations. Pl.'s Brief. [DE-14] at 5-6. Defendant is correct (*see* [DE-16] at 13) that the RFC is "an administrative assessment made by the Commissioner based on all the relevant evidence in the case record" and that the ALJ need not "obtain an expert medical opinion as to [the claimant's] RFC." *Felton-Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011). However, whether or not the undersigned is persuaded by the reasoning in *Janell W. v. Kijakazi*, CV 22-2339-BAH, 2023 WL 4456848, cited by Defendant, that case is readily distinguished from the instant case. In *Janell W. v. Kijakazi*, the court did not find that the ALJ's failure to "perform an explicit analysis of Plaintiff's abilities to lift, carry, push, or pull" required remand because the ALJ's decision "appears to have accounted for these functions," specifically because it was persuaded by "the state agency medical consultants' opinions that Plaintiff could perform a limited range of medium exertional work." *Janell W. v. Kijakazi*, CV 22-2339-BAH, 2023 WL 4456848, at *3.

In contrast, here, the ALJ does not agree with the lifting limitations opined by any of the medical professionals. Tr. 39-41. Disagreement with all medical opinions does not necessarily subject a case to remand. *See Patterson v. Colvin*, No. 5:12-CV-063-RLV-DCK, 2013 WL 3035792, at *5 (W.D.N.C. June 17, 2013) ("[T]he ALJ was not required to adopt in whole or in part any of the contested medical opinions in determining Plaintiff's RFC."). In this instance, however, the basis for the ALJ's disagreement here is problematic.

---

[4] The undersigned additionally notes that for an individual of advanced age such as Plaintiff (Tr. 42), a limitation to light work for a high school graduate or more in the absence of transferable skills would lead to a finding of disability under Medical Vocational Guideline 202.06. *See* 20 C.F.R. Pt. 404, Subpt. P, Appx. II § 202.06.

The ALJ discounted the light exertional level limitations opined by all four medical professionals, in each case, because of an absence of "significant . . . abnormal findings" related to Plaintiff's lifting or left shoulder (Tr. 39, 40), combined with an absence of "significant and ongoing complaints" (Tr. 39, 41) in two of the opinions. The undersigned cannot follow how multiple documented reports of shoulder pain and diminished muscle strength, as discussed above, fail to constitute "significant . . . abnormal findings." As noted above, Plaintiff does provide consistent complaints about pain in his shoulders. The ALJ does not point to any medical evidence that the medical professionals failed to consider, but rather appears to argue that the medical findings the medical professionals did consider were not "significant[ly] . . . abnormal." *See Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir. 1984) (emphasizing "that there is nothing in the record from any treating or examining physician any more beneficial to the Secretary than [the] report [that the ALJ found too permissive, and that] the ALJ erroneously exercised an expertise he did not possess in the field of orthopedic medicine.").

The ALJ may discuss evidence that could justify the ALJ's disagreement with the medical opinions. Here, however, the ALJ does not provide explanation in the written decision to explain why the medical findings on Plaintiff's shoulder injuries and associated limitations cited by the consultative examiners, and cited by the ALJ herself, fail to represent "significant . . . abnormal findings." Thus, the ALJ has failed to build a logical bridge from the underlying evidence to her findings. *Monroe*, 826 F.3d at 189 (quoting *Mascio*, 780 F.3d at 636) (stating that an ALJ "must include a narrative discussion describing how the evidence supports each conclusion").

For the reasons discussed above, the undersigned finds that remand is necessary because (i) the ALJ applied an incorrect legal standard in light of *Oakes*, 70 F.4th at 215, in evaluating Plaintiff's subjective complaints, and (ii) the ALJ's lacking explanation for discounting the medical

15

professionals' opinions is not sufficient to allow the undersigned to determine whether her findings were supported by substantial evidence. To be clear, the undersigned expresses no opinion as to whether Plaintiff does or does not require additional limitations, which is for the determination of the ALJ after weighing the evidence.

Accordingly, it is RECOMMENDED that this case be remanded to the Commissioner to evaluate Plaintiff's limitations under the correct legal standards, including *Oakes*, 70 F.4th at 215, and to provide sufficient explanation regarding the evidence the Commissioner considered in discounting the lifting limitations in the medical opinion evidence. On remand, the Commissioner should make findings and provide sufficient explanation in order to permit meaningful judicial review for substantial evidence, if necessary.

## VI. CONCLUSION

For the reasons stated above, IT IS RECOMMENDED that Plaintiff's Brief [DE-14] be ALLOWED, Defendant's Brief [DE-16] be DENIED, and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **February 14, 2025** to file written objections to this Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of

the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review.  In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.  *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this 3rd day of February, 2025.

_____
Brian S. Meyers
United States Magistrate Judge